**James WILKETT, d/b/a Wilkett Trucking Company, Petitioner,**

v.

**INTERSTATE COMMERCE COMMISSION and United States of America, Respondents.**

**No. 82-1373.**

United States Court of Appeals, District of Columbia Circuit.

Argued May 6, 1983.

Decided June 24, 1983.

John J. McMackin, Jr., Washington, D.C., for petitioner.

Colleen J. Bombardier, Atty., ICC, Washington, D.C., with whom John Broadley, Gen. Counsel, and Lawrence H. Richmond, Deputy Associate Gen. Counsel, ICC, John J. Powers, III and George Edelstein, Attys., U.S. Dept. of Justice, Washington, D.C., were on the joint brief for respondents. Kathleen M. Dollar, Atty., I.C.C., and Robert B. Nicholson, Atty., U.S. Dep't of Justice, Washington, D.C., also entered appearances for respondents.

Before EDWARDS, Circuit Judge, and McGOWAN and MacKINNON, Senior Circuit Judges.

Opinion for the Court PER CURIAM.

PER CURIAM:

## I.

Wilkett Trucking (the Company) began operations in 1975 and received its first Interstate Commerce Commission (Commission) license in 1978. The Company is currently authorized to transport coal from mines in four Oklahoma counties to facilities in eight Texas counties. Although the business is organized as a sole-proprietorship, it has been a Wilkett family operated enterprise throughout.

In March, 1981, the Company applied to the Commission for new, expanded authority to transport coal from all points in Oklahoma to any point in Texas. The Commission ordered a hearing and directed its Office of Consumer Protection to present facts regarding the proprietor's fitness (James Wilkett). The fitness issue arose because on February 12, 1981, Wilkett was convicted of conspiracy to distribute a controlled substance (dilaudid) in violation of 21 U.S.C. § 846 (1976).[1]

At the Commission hearing eight witnesses testified in favor of granting the expanded authority. Their testimony established that Wilkett Trucking was a well-run, highly regarded business which served its customers well. Testimony also revealed that the Company had made conscientious efforts to comply with Commission rules by hiring a compliance consultant and by instituting new internal recordkeeping and administrative procedures. The Office of Consumer Protection introduced only a certified copy of Wilkett's judgment and commitment order. No witness testified in opposition to the grant of authority. Nevertheless the Administrative Law Judge concluded that the proprietor's unfitness, as evidenced by the judgment of conviction, could not be separated from the overall fitness of the company and, therefore, he denied the application. *James Wilkett, d/b/a Wilkett Trucking Co.*, No. MC–121794 (Sept. 22, 1981). (Hereinafter cited as *Wilkett I*).

Wilkett Trucking appealed the decision to Division I of the Commission. The Division adopted the facts as found by the Administrative Law Judge, but reached a different conclusion. The Division found that the applicant, i.e., the Company, was fit and that the proposed expanded service was responsive to public need and would serve a useful public service. Citing Commission precedent, the Division concluded that past willful misconduct was not *per se* a bar to the grant of authority and focused its inquiry upon the business conduct of Wilkett Trucking. The Division found no evidence of disregard for trucking laws and regulations. Recognizing that its duty is to protect the public from misconduct in the trucking industry and not to levy additional punishment upon individuals, the Division concluded that the expanded authority should be granted. However, due to the unique circumstances the Division limited the grant of authority to two years subject to review upon expiration. *James Wilkett, d/b/a Wilkett Trucking Co.*, No. MC–

---

1. Wilkett was sentenced to 15 years in prison which he began serving on February 27, 1981. The conviction is on appeal.

121794 (Dec. 2, 1981). (Hereinafter cited as *Wilkett II*).

The Commission Office of Compliance and Consumer Assistance (formerly the Office of Consumer Protection) petitioned the full Commission for review of the Division's grant of authority. In its petition the Office informed the Commission that on November 25, 1981, James Wilkett was convicted in Oklahoma state court of second degree murder and sentenced to fifteen years imprisonment.[2] Based upon this new evidence the Commission granted the petition for review and reversed the decision by Division I. Finding that the proprietor's fitness could not be separated from that of the Company, the Commission concluded that Wilkett's convictions demonstrated a disregard for the law indicative of one who is unfit to hold a Commission authorization. *James Wilkett, d/b/a Wilkett Trucking Co.,* No. MC–121794 (Feb. 23, 1982). (Hereinafter cited as *Wilkett III*).

Wilkett filed an appeal with this court. The Commission moved for and was granted remand of the case for the purpose of reconsideration. Upon reconsideration the Commission reached the same conclusion— authority denied. Although it recognized that Wilkett is incarcerated and "does not exercise complete dominion over the operations of Wilkett Trucking," the Commission reaffirmed its earlier conclusion that James Wilkett and the Company are inseparable. *James Wilkett, d/b/a Wilkett Trucking Co.,* No. MC–121794 (Jan. 18, 1983). (Hereinafter cited as *Wilkett IV*).

Wilkett challenges the Commission's denial of additional authority.

## II.

■ The Motor Carrier provisions of the Interstate Commerce Act, 49 U.S.C. § 10922(b)(1) (Supp. V 1981), empower the Commission to grant authority for motor carrier operations "if it finds (1) that the applicant is 'fit, willing, and able properly to perform the service proposed'; and (2) that the service proposed 'is or will be required by the present or future public convenience and necessity.'" *Bowman Transportation, Inc. v. Arkansas-Best Freight Systems, Inc.,* 419 U.S. 281, 285, 95 S.Ct. 438, 441, 42 L.Ed.2d 447 (1974).[3] Judicial review of the Commission decisions is under the arbitrary and capricious standard. The court must review the agency's decision to determine that it is based upon a consideration of relevant factors and does not evidence a clear error of judgment. *Bowman, supra.*

■ Reviewing this Commission decision, we recognize that this is a unique case. In this instance the Commission was called upon to assess fitness where there was no record of company misdeeds; rather, fitness was at issue only because the sole-proprietor had been convicted of nontransportation related crimes. Notwithstanding the fact that the grant of authority will be issued to the Company, the Commission focused solely upon the fitness of the individual proprietor, James Wilkett. Such an inquiry is misdirected. While the proprietor's fitness may be relevant, the primary focus should be upon the Company's record of operations. In this instance, the record reveals and the Commission acknowledges that since commencing operations in 1978, Wilkett Trucking has *never* been cited for violation of Commission rules or regulations. The Company has demonstrated its commitment to continued lawful service by employing a compliance consultant (a former Commission regional director) to monitor Company practices and recordkeeping. There is no record evidence to suggest that the company would operate unlawfully in the future. Nevertheless the Commission

---

**2.** Petitioner states that the crime occurred during a "barroom brawl" and that the defendant, Wilkett, pleaded self-defense. The conviction is on appeal. Reply Brief at 17 n. 3.

**3.** In *Bowman Transportation,* the Supreme Court reviewed the Commission's grant of authority to three trucking companies under the standards established in 49 U.S.C. § 307 (1976). In this case we are called upon to review Commission action under 49 U.S.C. § 10922(b)(1). These two statutes are essentially identical, the more recent statute is a recodification with minor changes in language.

concluded that the "genuine risk of future noncompliance" with trucking regulations outweighed the "applicant's assurances that he will conduct his operations lawfully." *Wilkett IV, supra,* at 3. The Commission based its conclusion that the Company was unfit solely upon its view that James Wilkett's convictions were indicative of a predisposition on the part of the Company to violate trucking statutes and regulations. That conclusion is unreasonable.

The Commission's duty is to protect the public from *carrier* misconduct by issuing licenses only to carriers who are found to be "fit."[4] The fitness of Wilkett Trucking, the carrier, and James Wilkett, the individual, are severable. The opinion for Division I of the Commission reflects the proper focus in this case. The Division stated:

[A]pplicant's misconduct has not been shown to relate in anyway to his existing or proposed trucking operations and cannot be considered flagrant and persistent disregard of transportation related laws or regulations. It is also clear that his company is now being managed in such a manner as to insure that its operations will be in compliance with the laws, rules, and regulations governing interstate motor carriers. The Commission responsibilities in considering fitness of a motor carrier applicant are not directed toward punishment of misconduct, whether transportation related or not, but are to protect the public and others from continuing misconduct by a carrier. Without in any way condoning applicant's misconduct in other areas, we are satisfied that he has demonstrated that his trucking operation is being conducted in compliance with applicable law and regulations.

*Wilkett II, supra,* at 4.

We endorse this assessment of Wilkett Trucking's fitness.

In addition to improperly equating James Wilkett's fitness with that of the Company, the Commission also disregarded its own standards for evaluating fitness. When judging a carrier's fitness in light of past violations, the Commission has consistently applied the following test:

In determining the fitness issues, consideration must be given to the nature and extent of violations, such mitigating circumstances as might exist, whether the carrier's conduct represents a flagrant and persistent disregard for the provisions of the act, and whether sincere efforts have been made to correct past mistakes.

*Greyhound Lines, Inc. v. The Gray Line Scenic Tours, Inc.,* 121 M.C.C. 242, 265 (1975).

There is no indication that the Commission applied this test in the instant case. Without analysis, the Commission simply stated that a finding of unfitness was "mandated" because it found it not "likely that [Wilkett] would conduct himself as a motor carrier with any greater respect for those laws and regulations applicable to such carriers than he has with respect to those laws applicable to him as an individual." *Wilkett III, supra,* at 3. The Commission's *Wilkett* opinion does not evidence an adequate consideration of the relevant factors identified in *Greyhound Lines* and other fitness cases. In numerous cases where a license applicant has a record of prior violations of transportation statutes and/or regulations, the Commission has carefully scrutinized the past violations and considered mitigating circumstances.[5] *Sulli-*

---

**4.** The Commission has noted that the fitness inquiry is "*prospective* in nature having as its primary purpose the protection of the shipping public from a carrier with a negative compliance disposition." *Allan B. Robbins, d/b/a Robbins Trailer Service,* MC–160342 (Oct. 13, 1982) (emphasis added).

**5.** Most recently in *Robbins, supra* note 4, the Commission granted authority to an applicant whom it described as displaying a "cavalier

and disdainful attitude toward record keeping" which was "deplorable." *Id.* at 7. Since 1970, Robbins had repeatedly been found to be operating in violation of ICC regulations, held in contempt of court, and fined. The Commission acknowledged "numerous violations of [Department of Transportation] recordkeeping requirements" and a "general pattern of noncompliance." The Department of Transportation's Office of Compliance and Consumer Assistance "stressed the record showing of applicant's

van's Motor Delivery, Inc., 123 M.C.C. 559 (1975); Johnny Brown's, Inc., 111 M.C.C. 905 (1970); Eagle Motor Lines, Inc., 107 M.C.C. 499 (1968). The Commission has recognized the necessity to carefully consider the nature and extent of violations and any mitigating factors because

> otherwise the denial of a certificate on the basis that the carrier is unfit would be a punitive measure directed only at past unlawful operations, and as a practical matter, amount to retribution, not sound regulation. To avoid this pitfall, consideration of a carrier's fitness should embrace an evaluation of its willingness and ability to comport in the future with the applicable rules and regulations of this Commission.

Eagle Motor Lines, Inc., supra, 107 M.C.C. at 503.

In its Wilkett decisions, the Commission did not apply its aforequoted standards and philosophy in evaluating the fitness issue. Such an unexplained departure from previously applied standards suggests that the Commission's decision in this case is arbitrary and capricious. Atchison, Topeka & Santa Fe Railway Co. v. Wichita Board of Trade, 412 U.S. 800, 806–09, 93 S.Ct. 2367, 2374–75, 37 L.Ed.2d 350 (1973); West Coast Media, Inc. v. FCC, 695 F.2d 617, 620–21 (D.C.Cir.1982). The Commission's decisions in Robbins and Wilkett are difficult to reconcile and, at the least, suggest an inconsistency in decision-making.

### III.

Because the Commission erred in equating the Company's fitness with that of the proprietor, James Wilkett, and because the Commission failed to apply its usual standards in adjudging fitness, the decision in Wilkett Trucking is reversed.

continuing and long time failure to abide by lawful regulations." Id. at 5. Acknowledging that "a denial on fitness would seem to be in order," nevertheless the Commission granted the authority requested with the condition that the grant be reviewed in two years. The Commission justified its grant in Robbins by stating:

The Commission based its denial of the requested authority solely upon the fitness issue. As the finding of unfitness is clearly in error, the Commission is directed to issue the authority requested. However, the Commission did not have the opportunity to consider whether the new, expanded operating authority should be unqualified or issued for a limited time period, subject to review. Therefore, the case is remanded to the Commission for the purpose of promptly issuing the authority with such reasonable time limitations as it deems necessary.

*Judgment accordingly.*

It is not the Commission's policy in determining fitness to punish a carrier for past wrongs. While appropriate weight should be given to past violations, even a record of knowing and willful past violations is no bar to a finding of fitness.

