733 F.2d 105
 236 U.S.App.D.C. 13
 DEPARTMENT OF TRANSPORTATION, FEDERAL HIGHWAY
ADMINISTRATION, Petitioner,
v.
INTERSTATE COMMERCE COMMISSION and United States of America,
Respondents,
Port Norris Express Company, Inc., Intervenor.
 No. 83-1436.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Feb. 7, 1984.
Decided April 27, 1984.
 
 Petition for Review of an Order of the Interstate Commerce commission.
 Kathleen S. Markman, Atty., Dept. of Transp., Washington, D.C., for petitioner. Anthony J. Steinmeyer and Carlene V. McIntyre, Attys. Dept. of Justice, also entered appearances for petitioner.
 Richard J. Osterman, Atty. I.C.C., Washington, D.C., with whom John Broadley, Gen. Counsel, and Henri F. Rush, Associate Gen. Counsel, I.C.C., Washington, D.C., were on the brief for respondent, Interstate Commerce Commission.
 David C. Reeves, Arlington, Va., with whom William P. Jackson, Jr., Arlington, Va., was on the brief for intervenor, Port Norris Exp. Co., Inc.
 Before WALD, BORK and STARR, Circuit Judges.
 Opinion for the Court filed by Circuit Judge WALD.
 WALD, Circuit Judge:
 
 
 1
 The Department of Transportation (DOT), Federal Highway Administration (FHWA) petitions this court to review the Interstate Commerce Commission's (ICC or Commission) grant of a 15-month certificate authorizing Allan B. Robbins d/b/a Robbins Trailer Service to transport construction and road building equipment and materials. FHWA asks us to rule that the record in this case, indicating that Robbins repeatedly violated DOT safety regulations and ICC regulations, falls far short of meeting the statutory requirement of substantial evidence to support the Commission's finding that Robbins was fit, willing and able to provide the transportation authorized by the certificate. Because we agree the record is devoid of such substantial evidence, we vacate the Commission's order granting the certificate.[1]
 
 I. BACKGROUND
 
 2
 Robbins has transported construction and road building materials for at least 30 years, but has never before sought ICC authorization. During this period he frequently transported equipment in interstate commerce for himself and as an owner/operator hired by other ICC authorized carriers. In addition, Robbins regularly transported goods interstate without required ICC authorization. Because of such unlawful operations, Robbins paid "civil forfeitures" of $200 in 1970, $2500 in 1975, and $4000 in 1980.
 
 
 3
 In March 1982, Robbins applied for an ICC certificate authorizing him to operate as a motor common carrier to transport construction and road building equipment. The application was supported by statements of 23 shippers indicating a strong need for Robbins' services. Appendix to Application for Motor Carrier Certificate, Petitioner's Appendix at 15-80 [hereinafter cited as App.]. In his application Robbins admitted his unlawful operations which had led to civil forfeitures. He claimed, however, that he fully cooperated in the 1980 enforcement proceedings against him "with the understanding by [his] cooperation and the payment of the fine [he] was wiping the slate clean and that any application he would thereafter file would be decided [sic] on the merits." Verified Statement Accompanying Application for Motor Carrier Certificate at 6, App. at 8.
 
 
 4
 As a result of questions raised by the ICC's Office of Compliance and Consumer Assistance (OCCA) concerning Robbins' fitness, based on his past unauthorized operations and violations of DOT regulations, on June 1, 1982, the Commission ordered a hearing on the question of fitness. Shortly thereafter, the FHWA successfully petitioned to intervene for the purpose of presenting evidence regarding Robbins' safety fitness.[2] During the hearing, Robbins did not present any testimony, relying entirely on his verified statement accompanying his application. Both the OCCA and FHWA presented testimonial and documentary evidence of Robbins' extensive violations of ICC and DOT regulations.
 
 
 5
 The OCCA presented evidence that Robbins regularly operated without proper ICC authorization and that this resulted in civil forfeitures and court injunctions. Robbins continued to operate without authority in 1982, after he paid his $4000 fine which was to "wipe the slate clean," and even after he had applied for a motor common carrier certificate. See App. at 174-76.
 
 
 6
 The FHWA presented evidence that Robbins failed to comply with several DOT safety regulations with respect to every one of his trucks and drivers--as FHWA termed it, evidence of 100% noncompliance. DOT roadside inspections of eight vehicles illegally operating in interstate transit revealed that all eight failed to comply with DOT safety regulations. All eight were found to violate 49 C.F.R. Part 393, which governs parts and accessories necessary for safe operation. See App. at 130. Two of the eight vehicles had defective equipment which required that they be immediately taken out of service. Id. Other DOT safety regulations violated were those governing driver qualifications, 49 C.F.R. Part 391, drivers' hours of service, 49 C.F.R. Part 395, and equipment inspection and maintenance, 49 C.F.R. Part 396. Audits of Robbins' principal place of business in 1977 and 1981 revealed that he kept no records of driver qualifications, drivers' hours of service, or inspection and maintenance of equipment, in contravention of 49 C.F.R. Parts 391, 395, 396.[3] See App. at 367-73. Another audit in 1982, after Robbins had filed his motor carrier application, again revealed 100% noncompliance for the same reasons as the previous audits. App. at 374-76. Finally, the 1981 audit revealed that Robbins had failed to report two accidents involving his trucks, including one in which the driver of another car was killed. See App. at 243, 246.
 
 
 7
 The ALJ stated he was applying a five-part test that the Commission had laid down for fitness determinations when the hearing record indicates past violations of motor carrier regulations. That test generally requires an inquiry into the extent, nature and circumstances surrounding the past violations to assess the likelihood that the applicant will in the future comply with motor carrier regulations if it is granted a motor carrier certificate. See infra at 8. The ALJ did not, however, discuss how the record evidence bore on each of the five factors in the test. Rather, he characterized the DOT regulations that Robbins violated as "recordkeeping requirements," and noted that at least some violations had been corrected. Robbins, Common Carrier Application, ICC Docket No. MC-160342, ALJ Decision at 6 (Oct. 13, 1982)[hereinafter cited as ALJ Decision ], App. at 397. The ALJ summed up his fitness finding stating that:
 
 
 8
 Appellant [Robbins] has far from passed the usual five criteria to be considered in assessing fitness.... A denial on fitness would seem to be in order. Yet there are interest balancing aspects of this proceeding which lead the [ALJ] to conclude that a very limited term certificate is warranted .... A denial would unfairly punish shippers which would be left without any known carrier ready to fulfill their transportation needs.
 
 
 9
 Id. at 7-8, App. at 398-99. The ALJ thus found Robbins "conditionally fit." Id. at 9, App. at 400.
 
 
 10
 Both the OCCA and FHWA appealed the ALJ's decision. The full Commission affirmed the ALJ, relying heavily on Robbins' assertion that "he has paid the penalties for his transgressions and has promised to comply with administrative requirements," to conclude that Robbins "appears ready to conduct his operations in compliance with regulations." Robbins, Common Carrier Application, ICC Docket No. MC-160342, Commission Decision at 2 (Feb. 1, 1983) [hereinafter cited as Commission Decision ], App. at 429. It noted that the statute does not permit a finding of "conditional fitness"; either the applicant is fit or unfit. It found Robbins fit because "[i]n granting authority [the 15 month certificate], the Administrative Law Judge perforce found applicant fit." Id. Chairman Taylor dissented from this Commission Decision, finding no evidence in the record to support a finding of fitness.[4] The FHWA, for the first time in its history, challenged the ICC's grant of a motor carrier certificate by petitioning this court to review the Commission's Decision.[5]
 
 II. DISCUSSION
 
 11
 A. The Standard of Review for the ICC's Finding of Fitness
 
 
 12
 Before the ICC grants a certificate authorizing a person to provide transportation as a motor common carrier, it must find
 
 
 13
 (A) that the person is fit, willing and able to provide the transportation to be authorized by the certificate and to comply with this subtitle and regulations of the Commission; and
 
 
 14
 (B) on the basis of evidence presented by persons supporting the issuance of the certificate, that the service proposed will serve a useful public purpose, responsive to a public demand or need.
 
 
 15
 49 U.S.C. Sec. 10922(b)(1). The applicant for a certificate has the burden of proving his fitness. Curtis, Inc. v. ICC, 662 F.2d 680, 687 (10th Cir.1981). "[T]he purpose of the inquiry [into fitness] is to protect the public 'from carriers whose conduct demonstrates an unwillingness to operate in accordance with the requirements of regulation.' " Containerfreight Corp. v. United States, 685 F.2d 329, 332-33 (9th Cir.1982) (quoting Speedway Carriers, Inc., Extension-Pesticides, 128 M.C.C. 60, 66 (1970)). The inquiry is prospective; the Commission is to ascertain the likelihood that the applicant will obey the law in the future. See Wilkett v. ICC, 710 F.2d 861, 863-64 & n. 4 (D.C.Cir.1983).
 
 
 16
 Because of this forward looking nature of the inquiry, past violations of motor carrier regulations by an applicant do not necessarily preclude the grant of a certificate. See Armored Carrier Corp. v. United States, 260 F.Supp. 612, 615 (E.D.N.Y.1966), aff'd, 386 U.S. 778, 87 S.Ct. 1476, 18 L.Ed.2d 524 (1967). Nevertheless, "evidence of past disregard for the law raise[s] ... the reasonable inference that [an applicant] would likely continue to violate the law." Curtis, 662 F.2d at 687. For this reason, where an applicant for a motor common carrier certificate has acted in disregard of the law, the Commission has designed a five-part inquiry to determine whether past violations and disregard of motor carrier regulations is likely to continue. See Wilkett, 710 F.2d at 864; Curtis, 662 F.2d at 687-88; Associated Transport, Inc., Extension--TVA Plant, 125 M.C.C. 69, 73 (1976); Distributors Service Co., Extension--Foods, 118 M.C.C. 322, 329 (1973). Under this test the Commission considers
 
 
 17
 (1) [T]he nature and extent of ... [the carrier's] past violations, (2) the mitigating circumstances surrounding the violations, (3) whether the carrier's conduct represents a flagrant and persistent disregard of [the] Commission's rules and regulations, (4) whether it has made sincere efforts to correct its past mistakes, and (5) whether the applicant is willing and able to comport in the future with the statute and the applicable rules and regulations thereunder.
 
 
 18
 Curtis, 662 F.2d at 687-88 (quoting Associated Transport, Inc., 125 M.C.C. at 73); see also Wilkett, 710 F.2d at 864. By weighing these factors, the Commission decides whether future compliance with motor carrier regulations is assured.
 
 
 19
 In reviewing the Commission Decision, we must uphold its finding of fitness if that finding is supported by substantial evidence, and is not arbitrary, capricious or an abuse of discretion. 5 U.S.C. Sec. 706(2)(A), (E); see Bowman Transportation, Inc. v. Arkansas Best Freight System, Inc., 419 U.S. 281, 285-86, 95 S.Ct. 438, 441-442, 42 L.Ed.2d 447 (1974); Boston Carrier, Inc. v. ICC, 728 F.2d 1508 (D.C.Cir 1984). "The 'substantial evidence examination looks to whether the record, taken as a whole, contains such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Trailways, Inc. v. ICC, 673 F.2d 514, 517 (D.C.Cir.1982) (quoting National Council of American--Soviet Friendship, Inc. v. Subversive Activities Control Board, 322 F.2d 375 (D.C.Cir.1963)), cert. denied, 459 U.S. 862, 103 S.Ct. 137, 74 L.Ed.2d 117 (1982); see also Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Thus, in applying its five-part test, the ICC must still point to substantial evidence supporting its ultimate conclusion that Robbins appears ready to comply with ICC and DOT regulations.
 
 B. Review of the Record
 
 20
 The Commission on appeal agrees that its five-part test laid down in Associated Transport, 125 M.C.C. at 73, is appropriate in this case, and in its brief analyzes the record in terms of the five factors. The Commission Decision itself, however, never mentions the test or any of the five factors. See Commission Decision, App. at 428-30. The ALJ Decision did purport to apply the test, but actually analyzed the record evidence in terms of only one of the factors--the nature and extent of the violations. Moreover, the ALJ concluded that Robbins "has far from passed the usual five criteria" test. ALJ Decision at 7, App. at 398. Therefore, were we to focus solely on the ALJ and Commission Decisions, we would likely remand on the grounds that the path of the Commission's decisionmaking is not discernible and the Commission's grant of the certificate was therefore arbitrary and capricious. See Bowman Transportation, 419 U.S. at 286, 95 S.Ct. at 442. In this case, however, we have a more substantive ground for vacating the order: even accepting the Commission's analytical framework set forth in its brief, we can find no substantial evidence to support the finding of fitness under any of the five criteria.
 
 1. The extent and nature of violations
 
 21
 The record in this case clearly indicates extensive violations of ICC and DOT regulations by Robbins. The Commission, however, relies on the ALJ's characterization of these regulations as "record keeping in nature" to conclude they "were not the type that would harm shippers or the public." Brief for Respondent at 21. The record indicates otherwise: of eight vehicles actually inspected, all were found to violate regulations governing "parts and accessories necessary for safe operation." See 49 C.F.R. Part 393. Two of the eight were "placed out of service" (i.e., ordered immediately off the road for repairs). The ALJ noted that one of the vehicles was placed "out of service" for having no turn signals on the trailer, and concluded, without elaboration, that the violation was "not serious," despite its being serious enough for the DOT to require that it be immediately remedied. The ALJ did not mention that the same vehicle was also cited for having an inoperative speedometer and brake hoses that chafed. See App. at 379.
 
 
 22
 In addition, the ALJ's and Commission's characterization ignores the system by which DOT ensures safety compliance. DOT does not routinely examine trucks and drivers; the common carrier is responsible for making those examinations and keeping records of them. See generally 49 C.F.R. Parts 391-396. DOT then checks the records to ensure that the trucks and drivers are safe and qualified for operation. DOT has consistently argued that it could not uncover more "substantive" violations with respect to Robbins because it had no records to check. See Brief for Petitioner at 28. We thus find any characterization of these violations other than as serious to be unsupported by the record.[6]
 
 2. Mitigating circumstances
 
 23
 The Commission argues that mitigating circumstances existed at the times the DOT violations were committed. It notes: "[e]vidence indicated that Robbins was the only carrier able to serve some of the shippers." Brief for Respondent at 21. The mitigating circumstances, however, must be ones that "surround the violations." We do not see how the need for Robbins' services makes his violations of DOT safety regulations any less severe.[7] The lack of alternative carriers is a factor which relates not to Robbins' fitness, but to the need for his services, a requirement that Congress has explicitly separated from fitness. See 49 U.S.C. Sec. 10922 (separate fitness and needs showings are required). The Commission cannot circumvent this statutory scheme by considering need for the service as a factor that mitigates against a showing of unfitness.[8]
 
 
 24
 3. Flagrant disregard of laws and regulations
 
 
 25
 The Commission does not, indeed cannot, contend that Robbins' violations reflected anything less than a flagrant and persistent disregard for statutes and regulations, not to mention court orders. Even after Robbins applied for a motor carrier certificate he continued to flout the law by operating without authorization and in 100% noncompliance with DOT safety regulations. The Commission argues instead that in other cases it has issued temporary certificates of operating authority after continued flagrant violation of Commission regulations. But in those cases no violations of safety regulations were involved and there were special factors which supported the conclusion that the applicant would comply with regulations if it was granted a certificate. For instance, in Tennessee Cartage Co., Ext.--Georgia, 128 M.C.C. 819 (1978), the Commission found:
 
 
 26
 Ostensibly, some of the violations were occasioned by applicant's employees misinterpreting the scope of newly acquired operating rights. As a remedy, applicant programmed a computer with its outstanding rights and other data, thereby enabling surveillance of coded freight bills and rejection of those involving service beyond the scope of its authority. Moreover, unauthorized operations were discontinued and appropriate authority sought.
 
 
 27
 Id. at 822. In addition, in the cases where the Commission granted certificates despite post-application unauthorized operation, it explicitly found that these violations did not indicate flagrant and persistent disregard of the law. See Boyd Brothers, 129 M.C.C. at 533 ("applicant's unlawful operations did not result from a persistent or flagrant disregard for the provisions of the [Interstate Commerce Act]; rather ... they were performed [for 15 years] under a misunderstanding by application with respect to the nature of services performed"); Thompson Contract Carrier Application, 72 M.C.C. 179, 181 (1957) (applicant "lacked knowledge as to need for authority").
 
 
 28
 To the extent the Commission, in arguing that a record of flagrant and persistent violations of motor carrier regulations does not by itself bar a grant of a certificate, is in fact stating that there is more to the five-part test than this one factor, we agree. But, we see nothing in this record to support a conclusion that Robbins' violations were not flagrant and persistent, or that there were other factors present that justified a finding of fitness despite those violations.
 
 4. Sincere efforts to correct past mistakes
 
 29
 The Commission points to Robbins' assertions in his verified statement that he would comply with regulations if he was granted a certificate, and to his candor in admitting past violations, as "sincere efforts" to correct past unlawfulness. Statements of good intentions in the future do not, however, qualify as efforts to rectify past violations, and, in general, they are of limited value in assessing what the applicant's future conduct will be. As counsel for the ICC admitted at argument, every applicant states that he will comport with the Commission's regulations if he is granted a certificate. Nor does it take commendable candor to admit to unauthorized operations that have already led to civil forfeitures and are a matter of public record. Nothing in the record indicates that Robbins admitted violations of which the ICC did not already know or that his application alerted the ALJ to any of his numerous violations of DOT safety regulations. In fact the DOT and OCCA uncovered further violations and unauthorized operations after Robbins applied for authorization, which are not mentioned by Robbins in his application or at the certificate hearing. This circumstance alone erodes considerably the support for any finding of rehabilitation.
 
 
 30
 The Commission also notes that Robbins took at least one step to comply with DOT regulations; he obtained a driver's medical certificate for himself. We agree that this effort is a first step. But looking at the record as a whole, especially the evidence that none of Robbins' drivers had medical certificates on file, as required by 49 C.F.R. Part 391, it is hard to hang on to so thin an evidentiary strand to justify a finding of "sincere efforts to correct past unlawfulness."
 
 
 31
 5. Willingness and ability to comport in the future with applicable statutes, rules and regulations
 
 
 32
 This fifth factor in the Commission test subsumes the ultimate conclusion--the likelihood of a past violator's future compliance with the law. See Eagle Motor Lines, Inc., Extension--Lincoln, Alabama, 107 M.C.C. 499, 503 (1968) (setting out this fifth factor as the ultimate goal of the inquiry under the first four criteria). As we read it, this factor is a catch-all that allows the Commission to consider evidence bearing directly on an applicant's willingness to reform that may not fall within the first four criteria. In this case, the Commission cites no additional evidence under this catch-all factor (nor do we see any in the record); thus, we find no evidentiary support for an ultimate finding favorable to Robbins' fitness based on the fifth, catch-all factor.
 
 CONCLUSION
 
 33
 The Commission determined that Robbins was willing and able to comport with ICC and DOT regulations for common carriers despite a past record of total disregard and even disdain for such regulations. The Commission found Robbins' self-serving assertions that he would comply with regulations in the future, and a single instance where Robbins cured one (of a multitude) of past violations sufficiently indicative of his changed attitude to declare him fit. We believe, however, that no fair reading of this record can support the conclusion that Robbins was fit in the sense that he was willing and able to conform to applicable safety regulations in the future. Rather, it appears to us that the Commission blindly affirmed the ALJ's grant of a certificate, even though the ALJ stated that Robbins did not meet the five-criteria test for fitness. In so doing, the Commission accepted the ALJ's reliance on need for Robbins' services as a factor bearing on fitness, despite explicit statutory language indicating that need and fitness are separate prerequisites to the grant of a motor carrier certificate. See Curtis, 662 F.2d at 685. In sum, upon reviewing the record for evidence of fitness separate from need, as the Interstate Commerce Act requires, we find it contains no substantial evidence to support the Commission's finding that Robbins was fit.[9]
 
 
 34
 In reaching this conclusion we do not mean to suggest that Robbins' willful and past violations will forever bar him from receiving a motor carrier certificate. We agree with the Commission that the inquiry is prospective in nature and not punitive. But, based on the record before us we agree with Chairman Taylor's dissent:
 
 
 35
 Applicant's past conduct demonstrates a persistent and total disregard of the Commission's rules and regulations, DOT's safety regulations, and Federal Court orders. Moreover, applicant, who bears the burden of establishing his fitness, failed to introduce any evidence which would demonstrate that he has made sincere efforts to correct past violations. In fact, there is no evidence of record to show that applicant is presently operating in compliance with DOT's safety regulations.
 
 
 36
 ....
 
 
 37
 ... I do not believe the Commission can justifiably grant this applicant even a limited-term certificate with the hope that somehow this will induce him to comply with the law. Before issuing this applicant any authority, the Commission, at a minimum should require applicant to come forward and demonstrate that his operations are presently in compliance with DOT's safety regulations.
 
 
 38
 Commission Decision at 3, App. at 431 (Chairman Taylor, dissenting). For the foregoing reasons the order granting Robbins a limited term motor carrier certificate is vacated.
 
 
 39
 It is so ordered.
 
 
 
 [1]
 Intervenor, Port Norris Express Co., Inc., objects as well to the ICC's grant of bulk transport authority to Robbins. Port Norris contends that Robbins never applied for bulk transport authority and presented no evidence on fitness to transport goods in bulk. The Commission apparently relied on its finding of Robbins' fitness to transport specified commodities--"road building and construction equipment and machinery and related materials and supplies," ICC Certificate of Public Convenience and Necessity, Robbins, No. MC-160342 (issued June 30, 1983)--and its policy to avoid unnecessary restrictions on trade, to justify removing the bulk transport restriction the ALJ had placed on Robbins' authority. See Brief for Respondent at 29-30. Since we find the ICC's finding of fitness even for non-bulk shipping to be unsupported by substantial evidence, we need not reach the issue of whether the authorization of bulk shipping was proper
 
 
 [2]
 The Secretary of Transportation is authorized to intervene in ICC proceedings to present evidence on an applicant's fitness by the Department of Transportation Act, Pub.L. 89-670, Sec. 4(e), 80 Stat. 934 (1966) (current version at 49 U.S.C. Sec. 307). With regard to questions of fitness relating to motor carrier safety, the authority to intervene is delegated to the FHWA, an agency within the DOT. Department of Transportation Act, Pub.L. 89-670, Sec. 6(f)(3)(B), 80 Stat. 940 (1966) (current version at 49 U.S.C. Sec. 104(c)(2))
 
 
 [3]
 Prior to 1978, DOT did not audit Robbins because he claimed that he did not operate in interstate commerce. DOT's jurisdiction is limited to motor carriers operating in interstate or foreign commerce (i.e., transporting goods across state or national borders). See Department of Transportation Act, Pub.L. 89-670, Sec. 6(e)(G), 80 Stat. 939-40 (1966) (current version at 49 U.S.C. Sec. 3102)
 
 
 [4]
 Only three Commissioners voted to affirm the ALJ decision; two Commissioners dissented from the Commission Decision and one did not participate in the case. See Commission Decision, at 3, App. at 430
 
 
 [5]
 The OCCA is not authorized to appeal a Commission Decision. The FHWA, however, has included in its brief matters relating to fitness presented by the OCCA at the hearing
 
 
 [6]
 The ALJ also noted that Robbins' record over a thirty year period of service shows no accidents which were determined to be the fault of his trucks or drivers, see ALJ Decision at 7, App. at 398 (although the record indicates there is some question about whether an accident in Tennessee resulted from his trailer not having proper lights, see App. at 265). But "[t]he fitness of carrier encompasses [both] ... its willingness to adhere to the rules and regulations established pursuant to the Interstate Commerce Act, and ... its ability to properly, and safely perform the proposed service." Associated Transport, 125 M.C.C. at 73; see also Eagle Motor Lines, Inc., Investigation and Revocation of Certificates, 117 M.C.C. 30, 35, aff'd, 117 M.C.C. 72 (three member panel of Commission). Certainly, a common carrier cannot flout safety regulations simply because it has managed to avoid accidents in the past
 
 
 [7]
 We note that the Commission used the words "mitigating or extenuating circumstances surrounding the violations." Associated Transport, Inc., 125 M.C.C. at 73. Extenuate means "to lessen ... the seriousness of (as a crime, offense, or fault) or extent of (guilt) by making partial excuses ... or by affording a basis for excuses." Webster's Third Int'l New Dictionary (1963); see also Boyd Brothers Transportation Co., Ext.--Farm Equipment and Gypsum, 124 M.C.C. 528, 533 (1978) ("there are several extenuating circumstances that tend to mitigate the severity of the unlawful conduct ") (emphasis supplied)
 
 
 [8]
 The Commission also claims as a mitigating circumstance that Robbins performed at least some of his interstate operations under what he believed to be proper authority. See Brief for Respondent. We agree that this might explain, and hence mitigate, some of the violations for unauthorized operation. It still does not, however, explain violations of DOT safety regulations
 
 
 [9]
 The Commission argues that where there is some uncertainty about an applicant's future compliance with motor carrier regulations, a limited-term certificate is appropriate. That may be the case where there is some troubling evidence of unfitness despite substantial evidence to support a Commission determination of fitness. But where there is not sufficient evidence to support a finding of fitness in the first place, even a limited-term certificate cannot be granted under 49 U.S.C. Sec. 10922. "Because the applicant was unfit to receive a grant of permanent operating authority, it was also unfit to receive the limited-term certificate actually granted by the Commission." Curtis, 662 F.2d at 689; see also Containerfreight, 685 F.2d at 333