**EL CONEJO AMERICANO OF TEXAS, INC., et al., Petitioners,**

v.

**DEPARTMENT OF TRANSPORTATION and United States of America, Respondents.**

No. 00–1431.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 15, 2002.

Decided Feb. 1, 2002.

Richard H. Streeter argued the cause for petitioners. With him on the briefs was Richard P. Krinsky. Mark J. Andrews entered an appearance.

Bruce G. Forrest, Attorney, U.S. Department of Justice, argued the cause for respondents. With him on the brief was Leonard Schaitman, Attorney.

Before: SENTELLE and ROGERS, Circuit Judges, and WILLIAMS, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

El Conejo Americano of Texas, Inc. and its officers, Raymond D. Sena and his son, Daniel Sena, (collectively "El Conejo") petition for review of the July 28, 2000 decision of the Federal Motor Carrier Safety Administration ("FMCSA"), denying their application for registration as a motor common carrier of passengers pursuant to 49 U.S.C. § 13902. We deny the petition.

El Conejo contends that the FMCSA's determination that it and its officers are unfit ignores their past compliance with the safety fitness rating methodology approved by this court and is arbitrary, capricious, and unsupported by substantial evidence. Specifically, referencing *Department of Transportation v. ICC*, 733 F.2d 105 (D.C.Cir.1984), and *Wilkett v. ICC*, 710 F.2d 861 (D.C.Cir.1983), El Conejo maintains that the standards applied by the Interstate Commerce Commission ("ICC") continue to govern and that the FMCSA failed to apply them. This contention raises the threshold question whether the FMCSA is bound by the decisions of its predecessor agency, the ICC. The FMCSA does not address this point in its brief, maintaining instead that "[t]he statute [49 U.S.C. § 13902] does not confine examination of a registration application to an applicant's fitness ratings or restrict the agency's consideration to matters presented by the applicant." Resp't's Br. at 15. Ultimately, we conclude that it is unnecessary to resolve the binding nature of ICC decisions in this appeal.

El Conejo's contention depends on the following reasoning. Prior to Congress's enactment of the ICC Termination Act of 1995, Pub.L. No. 104–88, 109 Stat. 803 (1995) (codified as amended in scattered sections of 49 U.S.C.), the ICC controlled the granting of certificates authorizing the provision of transportation as a motor common carrier, pursuant to 49 U.S.C. § 10922(b)(1) (repealed 1995), and formulated a five-factor test for evaluating the extent to which past safety violations could preclude a motor carrier license. Under the five-factor test, the ICC considered:

(1) [t]he nature and extent of ... [the carrier's] past violations, (2) the mitigating circumstances surrounding the violations, (3) whether the carrier's conduct represents a flagrant and persistent disregard of [the] Commission's rules and regulations, (4) whether it has made sincere efforts to correct its past mistakes, and (5) whether the applicant is willing

and able to comport in the future with the statute and the applicable rules and regulations thereunder.

*Dep't of Transp.,* 733 F.2d at 110 (quoting *Curtis, Inc. v. ICC,* 662 F.2d 680, 687–88 (10th Cir.1981) (quoting *Associated Transp., Inc., Extension–TVA Plant,* 125 M.C.C. 69, 73 (1976))). In the ICC Termination Act, Congress abolished the ICC and transferred its authority to certify motor common carriers to the Department of Transportation. *See* Pub. L. No. 104–88, §§ 101, 103, 109 Stat. at 804, 880–84. In so doing, Congress replaced § 10922, the ICC's motor carrier certifying provision, with § 13902, a substantially similar provision, under which the Department of Transportation oversees the registration of motor carriers. *See id.* § 103, 109 Stat. at 880–84. The ICC Termination Act, however, also included a savings provision, which provided that the ICC's legal documents, including orders, determinations, rules, and regulations "shall continue in effect according to their terms until modified, terminated, superseded, set aside, or revoked in accordance with law by ... an[ ] authorized official, a court of competent jurisdiction, or operation of law." *Id.* § 204, 109 Stat. at 941–93. The Department of Transportation, acting through the Federal Highway Administration, recognized, pursuant to this savings provision, the continuing legal vitality of ICC decisions; it gave public notice that it interpreted the savings provision to cover "all legal documents of the ICC that were issued or granted by an official authorized to effect such document...." *Continuation*

*of the Effectiveness of Interstate Commerce Commission Legal Documents,* 61 Fed. Reg. 14,372 (1996); *see also Registration of For-hire Motor Carriers, Property Brokers, and Freight Forwarders,* 63 Fed. Reg. 7,362, 7,363 (1998); *General Jurisdiction over Freight Forwarder Service,* 62 Fed. Reg. 4,096, 4,097 (1997). While the entity responsible for overseeing motor carrier safety functions has shifted within the Department,[1] there is no indication that any of these entities has revised or repudiated ICC decisions on motor carrier registration.

Because of the substantial similarity between the statutory registration provisions of the ICC and its successor and the continuing vitality of ICC decisions, El Conejo, in effect, would have the court hold that the FMCSA could not modify, without explicit explanation, the ICC's decisions setting forth a five-factor test for the consideration of past violations in granting motor carrier registration. *Cf. Atchison, Topeka & Santa Fe Ry. Co. v. Wichita Bd. of Trade,* 412 U.S. 800, 808, 93 S.Ct. 2367, 2375, 37 L.Ed.2d 350 (1973); *Brusco Tug & Barge Co. v. NLRB,* 247 F.3d 273, 278 (D.C.Cir.2001). The court need not resolve this issue now, however. Assuming that the FMCSA is bound by ICC decisions interpreting its substantially similar registration provision and should have applied the ICC's five-factor test does not change the result in this appeal.

The court must uphold the FMCSA's decision unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C.

---

1. Initially, the Federal Highway Administration, in the Department of Transportation, had the duty to oversee motor carrier safety; this duty was briefly shifted to the Office of Motor Carrier Safety in the Department in 1999, *Organization and Delegation of Powers and Duties; Recission of Delegation to the Administrator, Federal Highway Administra-* *tion and Redelegation to Director, Office of Motor Carrier Safety,* 64 Fed. Reg. 56,270 (1999). Shortly thereafter, Congress established the FMCSA as an administration within the Department and shifted motor carrier safety functions to it. Motor Carrier Safety Improvement Act of 1999, Pub. L. No. 106–159, § 101, 113 Stat. 1748, 1750–52 (1999).

§ 706(2)(A). "[I]f satisfied that the agency has taken a hard look at the issues with the use of reasons and standards, the court will uphold its findings, though of less than ideal clarity, if the agency's path may reasonably be discerned...." *Hall v. McLaughlin*, 864 F.2d 868, 872 (D.C.Cir. 1989) (quoting *Greater Boston Television Corp. v. FCC*, 444 F.2d 841, 851 (D.C.Cir. 1970)). Although the FMCSA did not explicitly articulate the five-factor test, it considered each of its factors in concluding that El Conejo did not meet the statutory standard for motor carrier registration. As to the first and third factors, the FMCSA took into account State court findings of Mr. Raymond Sena's and El Conejo's violations of a stipulation entered into with the New Mexico Attorney General in a proceeding before the New Mexico Public Safety Commission with regard to Mr. Raymond Sena's operation of another bus company. It also had a report from its field staff regarding El Conejo's limited cooperation in the inspection of its equipment, evidence provided by the New Mexico Attorney General's office of several safety violations that occurred under the management of Mr. Raymond Sena in the operation of another bus company, as well as protests from the general public. As to the remaining factors, the FMCSA had affidavits submitted by El Conejo attempting to mitigate this evidence of past safety violations. FMCSA also evaluated the fact that Mr. Raymond Sena's son, Daniel Sena, was president of El Conejo, concluding that Mr. Raymond Sena was actually in charge of the daily operations of El Conejo. In addition, FMCSA considered El Conejo's predecessor's "Satisfactory" safety rating and El Conejo's descriptions of its future safety policies as evidence of future compliance. Further, in denying the application, the FMCSA specifically found "evidence of [Mr. Raymond Sena's] general disregard for safety requirements" and an absence of "the requisite intent and ability" to maintain compliance with safety standards notwithstanding "finely worded statements of policy and procedure put forward on their behalf." FMCSA Order at 5, 9 (July 28, 2000).

Thus, although the FMCSA did not articulate the five-factor test, it did adhere to it. Indeed, rather than contend that the FMCSA's failure to articulate the five-factor test was arbitrary and capricious despite its substantive adherence to the test, El Conejo instead seeks to have this court reweigh the evidence. El Conejo had an opportunity to have the evidence reweighed in an administrative appeal, *see* 49 C.F.R. § 365.111, but did not pursue such an appeal. The question before the court is whether FMCSA's conclusion was reasonable, as the court's role is not to reweigh the evidence. *See Sec'y of Labor v. Keystone Coal Mining Corp.*, 151 F.3d 1096, 1104 (D.C.Cir.1998); *see also Throckmorton v. Nat'l Transp. Safety Bd.*, 963 F.2d 441, 444 (D.C.Cir.1992). Based on the evidence before it, the FMCSA reasonably concluded that El Conejo would not comply with safety fitness standards in the future in light of evidence of its inability to comply with the stipulation it entered into with the New Mexico Attorney General, its failure to comply with the tenor of the agency's inspection order, and numerous past safety violations.

El Conejo's remaining contentions are meritless. The plain terms of § 13902 contemplate the consideration of evidence beyond past compliance with the safety fitness rating methodology under § 31144. *See* 49 U.S.C. § 13902(a). The ICC's five-part test, approved by the court, *see Wilkett*, 710 F.2d at 864–65, confirms this. Further, FMCSA's procedures were adequate, *see, e.g., Am. Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532, 538–39,

90 S.Ct. 1288, 1292–93, 25 L.Ed.2d 547 (1970); *Dist. No. 1, Pac. Coast Dist., Marine Eng'rs Beneficial Ass'n v. Maritime Admin.*, 215 F.3d 37, 42 (D.C.Cir.2000); *Fried v. Hinson*, 78 F.3d 688, 690–91 (D.C.Cir.1996); *Crawford v. U.S. Dep't of Agric.*, 50 F.3d 46, 49 (D.C.Cir.1995), and any shortcomings did not rise to the constitutional level. *See Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 653–56, 110 S.Ct. 2668, 2679–81, 110 L.Ed.2d 579 (1990). Finally, as noted, ample evidence supported the FMCSA's decision.

Accordingly, we deny the petition.