**James WILKETT d/b/a Wilkett Trucking Co., Petitioner,**

v.

**INTERSTATE COMMERCE COMMISSION and United States of America, Respondents.**

**No. 82–1373.**

United States Court of Appeals, District of Columbia Circuit.

April 22, 1988.

---

John J. McMackin, Jr., and June E. Edmondson, Washington, D.C., were on the motion for attorney fees and expenses.

Michael Martin, Atty., Colleen J. Bombardier, Atty., Lawrence H. Richmond, Deputy Associate General Counsel, Henri F. Rush, Associate General Counsel, John Broadley, General Counsel, I.C.C., William F. Baxter, Charles F. Rule, Asst. Attys.

Gen., Robert B. Nicholson, and Laura Heiser, Attys., Dept. of Justice, Washington, D.C., were on responses to motion for attorney fees and expenses.

Before EDWARDS and RUTH BADER GINSBURG, Circuit Judges, and MacKINNON, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

James Wilkett seeks an award of attorney fees and expenses under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412 (1982 & Supp. III 1985), as the prevailing party in a case against the Interstate Commerce Commission ("ICC"). *See Wilkett v. ICC,* 710 F.2d 861 (D.C.Cir.1983). The disposition of this case has been long delayed because the original request for fees languished unnoticed in the Clerk's Office for almost four years. We express our regrets for this unfortunate situation, especially since there is no good excuse for the mishandling of Wilkett's initial application for fees.

Albeit belatedly, we now conclude that a fee award is appropriate, because the position of the United States in agency proceedings and in litigation before this court lacked substantial justification and because no special circumstances render an award unjust. We find, however, that two of the Government's objections to the amounts claimed by Wilkett are valid. We have therefore modified the requested award accordingly.

## I. Background

Wilkett Trucking Company ("Wilkett Trucking"), a family business owned by James Wilkett, began operations in 1975 and received its first ICC license in 1978. In March 1981, it applied to the ICC for expanded authority to transport coal from all points in Oklahoma to any point in Texas. The ICC denied Wilkett Trucking's license application because James Wilkett

had been convicted in 1981 of second-degree murder under Oklahoma law and conspiracy to distribute a controlled substance in violation of 21 U.S.C. § 846 (1976). In the ICC's judgment, Wilkett's evident disregard for the law rendered him unfit to hold a license, and his ownership of Wilkett Trucking in turn rendered the company unfit for the ICC authorization it had requested.

Wilkett appealed the ICC's decision to this court. The ICC thereupon requested us to remand the case for reconsideration, which we did. Upon reconsideration, the ICC affirmed its earlier denial of Wilkett Trucking's license application. Wilkett again appealed.

This time we reached the merits and reversed. Finding that the ICC's decision constituted "an unexplained departure from previously applied standards," we ruled that the ICC's denial of Wilkett Trucking's application was arbitrary and capricious. *Wilkett v. ICC,* 710 F.2d 861, 865 (D.C.Cir.1983). Accordingly, we remanded the case to the ICC "for the purpose of promptly issuing the authority with such reasonable time limitations as it deems necessary." *Id.*

On July 22, 1983, Wilkett filed a timely application for attorney fees and other expenses under the EAJA, including fees and expenses incurred in making the fee application. The Government opposed Wilkett's application. Wilkett submitted a reply to the Government's objections (for the preparation of which Wilkett also requested attorney fees and expenses), and the Government responded with a second memorandum. Due to a clerical error in the Court Clerk's Office, the panel that decided Wilkett's appeal was not notified of his attorney fee application until four years later, when Wilkett inquired into the delay. On October 14, 1987, we directed the parties to submit supplemental memoranda addressing the ramifications for Wilkett's application of the 1985 amendments to the EAJA and of pertinent judicial decisions issued since the time of Wilkett's initial application.

## II.  ANALYSIS

Section 2412(d)(1)(A) (Supp. III 1985) provides:

Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

■ The Government does not deny that Wilkett meets the statutory definition of a "party" or that he prevailed in his appeal. Nor is there any longer reason to doubt that Wilkett's suit constituted a "civil action" not sounding in tort. To be sure, in 1983 the Government contended that judicial review of an agency licensing decision was not a "civil action" for purposes of 28 U.S.C. § 2412 because another provision of the EAJA, codified at 5 U.S.C. § 504(b)(1)(C) (1982), explicitly precluded an award of attorney fees in connection with *agency* proceedings "for the purpose of granting or renewing a license." The 1985 amendments to the EAJA, however, added the phrase "including proceedings for judicial review of agency action" to clarify the unexplained existing reference to "any civil action." Equal Access to Justice Act, Extension and Amendment of 1985, Pub.L. No. 99–80, § 2(a)(2), 99 Stat. 183, 184. The Government apparently concedes that this addition eviscerates its former objection. *See* Respondents' Supplemental Memorandum in Opposition to Petitioner's Application for Fees and Other Expenses at 4 n. 3. In light of the change, Wilkett's suit plainly falls within the statutory definition of "any civil action." [1]

1. The 1985 amendments unquestionably apply to this case. The Extension and Amendment

Because these prerequisites have been met, our analysis must proceed in three stages. First, we must ascertain whether the Government's position was "substantially justified." If it was not, then we must further ask whether "special circumstances" would render an award of attorney fees unjust. If the answer to this question is also negative, we must, finally, consider the Government's objections to the amount of the fees Wilkett claims.

### A. Was the Position of the United States "Substantially Justified"?

■ In determining whether the Government's position was substantially justified, we must examine the ICC's actions and explanations as well as the Government's arguments before this court. The EAJA, as amended, defines the "position of the United States" to mean, "in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based." 28 U.S.C. § 2412(d)(2)(D) (Supp. III 1985). The EAJA further provides that "[w]hether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought." 28 U.S.C. § 2412(d)(1)(B) (Supp. III 1985). The burden of proving that its position was substantially justified both in agency proceedings and in litigation rests with the Government. See Federal Election Comm'n v. Rose, 806 F.2d 1081, 1086–87 & n. 12 (D.C. Cir.1986); Spencer v. NLRB, 712 F.2d 539, 557 (D.C.Cir.1983), cert. denied, 466 U.S. 936, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984).

Act of 1985 provides that "the amendments ... shall apply to cases pending on ... the date of enactment of this Act." Pub.L. No. 99–80, § 7(a), 99 Stat. 183, 186. This court has held that a case was pending on the date of enactment—August 5, 1985—even if only the fee petition, but not the merits of the underlying case, awaited judicial resolution on that date. Center for Science in the Public Interest v. Regan, 802 F.2d 518, 524 & n. 10 (D.C.Cir.1986).

Under the law of this circuit, the Government's position was "substantially justified" if the Government "acted slightly more than reasonably, even though not in compliance with substantive legal standards applied in the merits phase" of the litigation. Rose, 806 F.2d at 1087; see also Baker v. Commissioner, 787 F.2d 637, 643 n. 10 (D.C.Cir.1986); Blitz v. Donovan, 740 F.2d 1241, 1244 (D.C.Cir.1984); Spencer, 712 F.2d at 558. A finding that an agency acted arbitrarily and capriciously within the meaning of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), does not preclude the Government from demonstrating that the agency's actions and its conduct in litigation were "substantially justified." Some types of arbitrary and capricious behavior, such as an agency's failure to provide an adequate explanation for its actions or its failure to consider some relevant factor in reaching its decision, may not warrant a finding that an agency's action lacked substantial justification under applicable statutes or regulations. See, e.g., Rose, 806 F.2d at 1087–89. However, a finding that an agency acted arbitrarily and capriciously by denying equal treatment to two similarly situated parties, or by failing to enforce a rule in a situation to which it plainly applied, renders it much more likely that the Government's action was not substantially justified. See Rose, 806 F.2d at 1089.

On the facts of this case, we find that the Government has failed to satisfy its burden of showing that its position was substantially justified. The ICC's actions and the Government's arguments before this court clearly fail this circuit's test of "slightly more stringent than 'one of reasonableness.'" Spencer, 712 F.2d at 558. Indeed, they do not even deserve the appellation "reasonable."[2]

---

2. Thus, even if the Supreme Court should endorse a weaker test of "reasonableness" in deciding Underwood v. Pierce, 761 F.2d 1342 (9th Cir.1985), cert. granted, — U.S. —, 107 S.Ct. 2177, 95 L.Ed.2d 834 (1987), the Government's position in this case would still fail.

In denying Wilkett Trucking's license application, the ICC considered only the owner's fitness for the expanded authority. Moreover, it based its decision solely on James Wilkett's criminal convictions, not on his record of compliance with ICC regulations. We described this approach as "misdirected" and "unreasonable" in overturning the ICC's decision:

Notwithstanding the fact that the grant of authority will be issued to the [Wilkett Trucking] Company, the Commission focused solely upon the fitness of the individual proprietor, James Wilkett. Such an inquiry is misdirected. While the proprietor's fitness may be relevant, the primary focus should be upon the Company's record of operations. In this instance, the record reveals and the Commission acknowledges that since commencing operations in 1978, Wilkett Trucking has *never* been cited for violation of Commission rules or regulations. The Company has demonstrated its commitment to continued lawful service.... There is no record evidence to suggest that the company would operate unlawfully in the future.... The Commission based its conclusion that the Company was unfit solely upon its view that James Wilkett's convictions were indicative of a predisposition on the part of the Company to violate trucking statutes and regulations. That conclusion is unreasonable.

*Wilkett*, 710 F.2d at 863–64.

We further noted that, "[i]n addition to improperly equating James Wilkett's fitness with that of the Company, the Commission also disregarded its own standards for evaluating fitness." *Id.* at 864. The ICC's decision betrayed a gross failure to use the test it had "consistently" applied "[w]hen judging a carrier's fitness in light of past violations." *Id.* We concluded:

In its *Wilkett* decisions, the Commission did not apply its aforequoted standards and philosophy in evaluating the fitness issue. Such an unexplained departure from previously applied standards suggests that the Commission's decision in this case is arbitrary and capricious. The Commission's decisions in [*Allan B. Robbins, d/b/a Robbins Trail-*

*er Service*, No. MC–160342 (I.C.C. Oct. 13, 1982),] and *Wilkett* are difficult to reconcile and, at the least, suggest an inconsistency in decision-making.

*Id.* at 865 (citations omitted).

The Government suggests that the agency's position was substantially justified, and that our opinion not only recognizes the arguable merit in the agency's position by describing the ICC's actions as merely "misdirected," but faults it primarily for its failure to offer a justification for its actions, not for their being unjustifiable. The Government's reading of our opinion, however, is untenable. We described the ICC's exclusive focus on James Wilkett's criminal offenses not only as "misdirected," but as positively "unreasonable." And while our opinion admittedly focused on the ICC's failure to explain its decision, particularly in light of clearly contrary agency precedent, our holding perforce assumed that no adequate explanation was possible. We did not simply remand the case to the ICC for a fuller statement of reasons on behalf of its decision. Rather, we granted Wilkett Trucking's petition for review and reversed the ICC's decision "because the Commission failed to apply its usual standards in adjudging fitness." 710 F.2d at 865. "As the finding of unfitness is clearly in error," we said, "the Commission is directed to issue the authority requested." *Id.* We could not have stated more plainly that the ICC's actions lacked substantial justification.

A cursory review of the relevant factors listed in *Spencer*, 712 F.2d at 559–61, buttresses this conclusion. Although those factors were designed to guide a court in determining whether the Government's stance in litigation, as opposed to the underlying agency action, was substantially justified, they remain relevant to our inquiry, both because the "position of the United States" includes its litigating posture and because two of these factors may be used to assess the justifiability of agency action as well. One of the factors mentioned in *Spencer*—the clarity of the governing law—certainly militates in favor of awarding attorney fees. In *Wilkett*, we

found that the ICC failed to apply the test of fitness it had "consistently" applied in the past, and that when the test was properly applied, the ICC's "finding of unfitness [was] clearly in error." *Wilkett,* 710 F.2d at 865. A second factor discussed in *Spencer*—the consistency of the Government's position—again favors Wilkett's application. The ICC's decision in *Wilkett* cannot easily be reconciled with its ruling in *Robbins.* We were unable to square the two cases when we reached our decision on the merits, and the Government has never offered a plausible demonstration of their consistency. We must therefore conclude that both the Government's position in litigation and the ICC's decision were not "substantially justified." They did not even pass the test of "reasonableness" the Government has urged us to adopt.

## B. *Do "Special Circumstances" Make a Fee Award Unjust?*

■ Even if the position of the United States was not substantially justified, a fee award is inappropriate if "special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The legislative history of the provision indicates that this "safety valve" was designed to "insure that the Government is not deterred from advancing in good faith the novel but credible extensions and interpretations of the law that often underlie vigorous enforcement efforts" and to permit courts to rely on "equitable considerations" in denying a fee award. H.R.REP. No. 1418, 96th Cong., 2d Sess. 11, *reprinted in* 1980 U.S.CODE CONG. & ADMIN.NEWS 4953, 4984, 4990. We emphasized in *Spencer,* however, that fees should ordinarily be awarded if the Government loses a "test case" in which it argued that controlling precedent should be overruled, not merely that precedent should be extended or reinterpreted in a novel way. A possible award of fees should not deter the Government from bringing a "test case" if it deems the matter sufficiently important; more significantly, it would be unjust to compel the private party, chosen arbitrarily by the Government, to incur the full cost of reconsidering an established rule when the benefits of doing so redound to the community as a whole. *See Spencer,* 712 F.2d at 558–59 & n. 72.

The Government contends that in *Wilkett* the ICC considered an issue of first impression—whether a trucking company might lawfully be denied a license based upon the proprietor's criminal convictions for nontransportation offenses—and resolved it by extending the criteria it routinely used to assess an applicant's fitness. We find this characterization dead wrong. As we said when rendering judgment on the merits, the ICC's decision did not constitute a plausible extension of prevailing standards of fitness. Rather, it marked "an unexplained departure from previously applied standards" that was inconsistent with the ICC's decision in a similar case. *Wilkett,* 710 F.2d at 865. We concluded, moreover, that the Government's position was "misdirected," indeed flatly "unreasonable." In the face of these findings, the Government can hardly argue that it advocated not only a novel but also a "credible" extension of existing law, which the legislative history establishes as a precondition to a denial of fees when the Government's position lacked substantial justification. Wilkett is clearly entitled to an award of attorney fees.

## C. *Calculation of the Fee Award*

Wilkett requests $71,561.41 in fees and expenses, apportioned as follows:

| | |
|---|---:|
| Fees associated with merits litigation | $40,125.00 |
| Photocopying | 445.01 |
| Fees associated with initial fee application | 5,988.00 |
| Fees associated with reply memorandum | 14,418.00 |
| Photocopying | 192.20 |
| Fees associated with supplemental memorandum ordered by court on 10/14/87 | 10,125.00 |
| Photocopying | 268.20 |
| TOTAL | $71,561.41 |

We consider in turn the Government's various objections to the amounts requested.

### 1. The Availability of a Fee Award for the 1987 Memorandum

█ The Government contends that, even if Wilkett has a right to attorney fees in connection with the merits litigation and his 1983 memoranda in support of his fee application, he may not recover for the 1987 memorandum this court ordered him to submit. The Government notes that Wilkett waited four years from the time he filed his fee application before inquiring into its status. The Government conjectures that the supplemental memorandum we requested would not have been necessary had Wilkett earlier directed the court's attention to the delayed processing of his application. It therefore claims it ought not have to pay for Wilkett's indolence. *See* Respondents' Supplemental Memorandum in Opposition to Petitioner's Application for Fees and Other Expenses at 10 n. 12.

This argument is baseless. A court has authority to require supplemental briefing by the parties as it deems helpful. Indeed, we do so frequently, particularly where, as here, the law is and has been in a state of flux. As the Government recognizes, if the EAJA applies to the merits litigation of a case, it applies equally to work done in connection with the prevailing party's fee application. Any work ordered by this court is similarly compensable.

Furthermore, we are unwilling to hold Wilkett responsible for an error committed in our Clerk's Office. The blame for the delay in this case lies with the court, not the parties, and we will not penalize Wilkett for our error.

Finally, the rapidly developing case law and the statutory changes wrought by the 1985 EAJA amendments would likely have prompted us to request additional assistance from the parties even if Wilkett had inquired about the processing of his fee application after only a couple of years. Hence, we see no reason whatever to deny Wilkett recompense for work done on his 1987 memorandum.

### 2. Cost-of-Living Adjustments to the Maximum Statutory Fee

Section 2412(d)(2)(A) reads in part:

The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that ... (ii) attorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.

This provision unambiguously licenses cost-of-living adjustments ("COLAs") to the $75 per hour ceiling established by the EAJA.[3] In computing a COLA, however, we must answer two questions. First, what should serve as the baseline date in measuring the COLA? Second, should an adjustment be made to the year in which legal services were rendered, or to the year in which the fee award is paid?

█ The first of these questions was answered by our decision in *Hirschey v. FERC*, 777 F.2d 1, 5 (D.C.Cir.1985). The baseline date for measuring an adjustment to the statutory cap is 1981, the year in which the EAJA became effective. The fact that this provision was not amended in 1985 when the sunset provision of the EAJA (which was initially to remain in

---

**3.** In *Library of Congress v. Shaw*, 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986), the Supreme Court stated that, "[i]n the absence of express congressional consent to the award of interest separate from a general waiver of immunity to suit, the United States is immune from an interest award." *Id.* at 2961. This rule applies "whether the loss to be compensated by an increase in a fee award stems from an opportunity cost or from the effects of inflation." *Id.* at 2965. The principle enunciated in *Shaw*, however, does not bar a COLA to the $75 per hour cap in this case, because section 2412(d)(2)(A) explicitly permits adjustments to the cap to compensate attorneys for "increases in the cost of living."

force only three years) was repealed, does not entail that the $75 per hour cap should form a new baseline in 1985. There is no indication in the legislative history that Congress intended the 1985 EAJA amendments to have this consequence. In addition, our adoption of a new $75 per hour baseline in 1985 would have the anomalous result of entitling parties to collect larger fee awards for work done in 1984 than in 1986, since the former could obtain a three-year adjustment to the $75 per hour cap, whereas the latter could only receive a one-year adjustment to the same cap. We therefore adhere to our view in *Hirschey* that a COLA to the $75 per hour ceiling should be measured from 1981.

■ The second question has also been answered already by this court. In *Massachusetts Fair Share v. Law Enforcement Assistance Administration*, 776 F.2d 1066 (D.C.Cir.1985), we refused to allow a COLA to the $75 per hour cap for work performed in 1981, even though fees were not awarded until 1985. *See id.* at 1069. We are constrained to follow that holding in reviewing Wilkett's fee request.[4]

■ The adjustment to the $75 per hour maximum statutory fee is relevant to two elements of Wilkett's request. First, one of Wilkett's lawyers billed at a rate of $85 per hour for work done in 1982–83. That hourly rate exceeds the cap of $75 per hour even with a COLA. Unless the "special factors" exception applies, that amount is not fully compensable under the EAJA.[5]

Second, Wilkett requests reimbursement for work performed on his 1987 Supplemental Memorandum at hourly rates of $100 and $125. These figures far exceed the $75 per hour cap with a COLA to November 1987, when most of the work on the Supplemental Memorandum was performed. According to the U.S. Department of Labor Consumer Price Index, the cost of living increased in the Washington, D.C.–Maryland–Virginia urban area by 27.77% between October 1981 and November 1987. This produces an adjusted cap of $95.83. Unless "special factors" justify increasing this amount, Wilkett's request for complete reimbursement for these services must be denied. Wilkett's attorneys billed 47.3 hours at a rate of $125 per hour, and 39.5 hours at a rate of $100 per hour, resulting in a total bill for the two attorneys involved of $9,862.50. If the adjusted cap of $95.83 is applied to these services, the fee award must be reduced to $8,318.04.[6]

4. Our holding in *Hirschey*, decided the same day as *Massachusetts Fair Share*, is not to the contrary. We wrote in *Hirschey:*

We recognize that there is arguably a question whether we should limit the fees for the hours billed each year by the adjusted statutory maximum applicable *for that year*, or rather limit them only by the *current* statutory maximum. We will adopt the latter approach, in order to compensate petitioner for delay, as we are authorized to do under the "special factors" criterion in EAJA.

777 F.2d at 5 (emphasis in original). As the final sentence of this passage makes clear, the COLA to the date of the award (rather than to the date when services were rendered) that we granted in *Hirschey* was justified under the "special factors" exception, not the EAJA's express allowance for enhancements to the cap to compensate for "increases in the cost of living." There is thus no inconsistency between our decisions in *Hirschey* and *Massachusetts Fair Share.*

5. Because we conclude that "special factors" justify awarding the full $85 per hour Wilkett requested for this work, *see* Part II.C.3 *infra*, we need not calculate the exact amount of the applicable COLA.

6. Wilkett argues that the statutory cap "applies only to the amount of compensation paid solely and directly for a lawyer's services; it has no applicability to the amounts paid a lawyer for his or her overhead or other costs." Petitioner's Reply to Respondents' Opposition to Petitioner's Application for Attorneys' Fees at 37. Wilkett contends that the hourly fees billed by his attorneys include overhead and secretarial costs, and that once these costs have been deducted, the hourly fees do not exceed the adjusted cap. Wilkett concludes that his attorney fees are compensable in full because that portion represented by the attorneys' own work is below the cap and because the remainder is obtainable separately.

This argument is meritless. As Wilkett himself acknowledges, in *Hirschey* we rejected a separate claim for overhead and secretarial expenses because they "are traditionally covered by attorneys' fees and not charged separately." 777 F.2d at 6. We adhere to that reasoning here. It is true, as Wilkett points out, that the House committee report states: "The ceiling on attorney fees relates only to the compensation of lawyers or agents (e.g., accountants themselves). It does not include their overhead expenses or other costs connected with their rep-

### 3. Unusual Delay as a "Special Factor"

■ Section 2412(d)(2)(A) limits awards of attorney fees to the $75 per hour cap adjusted for increases in the cost of living "unless the court determines that ... a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." In the past, we have increased the adjusted cap to compensate parties for the cost of foregone investment attributable to delayed payment of the award, on the assumption that delay may be counted as a "special factor" justifying a higher award. *See Hirschey,* 777 F.2d at 5 (award calculated on basis of current billing rates rather than rates when services performed because processing of fee award was greatly delayed by clerical error in Clerk's Office); *Action on Smoking & Health v. Civil Aeronautics Bd.,* 724 F.2d 211, 219 (D.C. Cir.1984) (slight increase in cap allowed because payment of award occurred four years after services were rendered, where delay was partly attributable to agency's six requests for stays).

We continue to believe that delay may be regarded as a "special factor" under the EAJA. The Supreme Court's decision in *Library of Congress v. Shaw,* 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986), does not alter the law of the circuit on this point. The Court in *Shaw* held that, in the absence of express congressional consent, a fee award may not be adjusted upward to take account of inflation or the opportunity cost of capital. However, the statutory provision considered by the Court in *Shaw* was 42 U.S.C. § 2000e–5(k), which only allowed an award of "a reasonable attorney's fee." By contrast, the EAJA *explicitly permits* a court to raise the $75 per hour ceiling if it determines "that an increase in the cost of living or a special factor ... justifies a higher fee." Therefore, we adhere to the holdings enunciated in *Hirschey* and *Action on Smoking,* which read section 2412(d)(2)(A) to allow increases in the statutory cap to compensate parties for prolonged delay in payment *when a court deems such increases equitable.* In reaching this conclusion, we think it significant that the Supreme Court has said, after its decision in *Shaw:* "We do not suggest ... that adjustments for delay are inconsistent with the typical fee-shifting statute." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* — U.S. —, 107 S.Ct. 3078, 3082, 97 L.Ed.2d 585 (1987).

We emphasize, however, that no adjustment of the $75 cap other than that necessary to compensate for an increase in the cost of living is available in routine cases. Some delay in payment is inevitable, given the strain under which almost all courts labor. The *normal* delay attendant on litigation of a fee request can hardly be called a *"special* factor." Nor will we permit an increase in the cap in every instance when there has been a delay in payment that is unusually long. If, for example, a prolonged delay is attributable to the negligence of the party requesting fees, an upward revision of the adjusted cap might not be warranted. Where the delay is exceptional and not attributable to negligence or improper conduct by the prevailing party, however, an increase might be appropriate where the prevailing party is able to justify the increase it seeks.

In the instant case, we find that Wilkett has made the requisite showing with regard to work billed by one of his attorneys at $85 per hour in 1982–83. The small

resentation of a particular interest in a proceeding." H.R.Rep. No. 1418, 96th Cong., 2d Sess. 15, *reprinted in* 1980 U.S.Code Cong. & Admin.News 4984, 4994; *see also* S.Rep. No. 253, 96th Cong., 2d Sess. 16. Commentators who have reviewed this passage in view of the purposes of the EAJA and the statute's text have concluded, however, that "Congress cannot have intended to permit attorneys to recover separately under the Act for [overhead and secretarial] expenses." Robertson & Fowler, *Recovering Attorneys' Fees from the Government Under the Equal Access to Justice Act,* 56 Tul.L.Rev. 903, 941 (1982). Overhead and secretarial expenses are almost invariably included in attorneys' hourly rates, and section 2412(d)(2)(A) expressly requires that fee awards be based on "prevailing market rates." We therefore construe the statutory cap as applying to the combined charges for attorneys' services, overhead, and secretarial work. In other words, we follow *Hirschey,* which forbids independent recovery of overhead and secretarial expenses.

increase in the adjusted cap that Wilkett has requested for this work is amply justified by the exceptional delay, through no fault of his own, in our consideration of his application. We therefore allow recovery at a rate of $85 per hour for the attorney's services over five years ago.[7]

We refuse, however, to allow Wilkett to obtain attorney fees at hourly rates of $100 and $125 per hour for work performed in late 1987. Wilkett contends that we should permit recovery of fees in excess of the adjusted cap of $95.83 per hour, in order to compensate him to some extent for delayed payment of the fee award for services performed in 1982–83. *See* Petitioner's 1987 Supplemental Memorandum at 20–21. However, Wilkett asks us to do what the law plainly forbids. Our award of fees for work performed in 1987 is *not* tardy. Hence, the statute does not permit us to order reimbursement for this work at a rate above the adjusted cap of $95.83 per hour. Because we lack statutory authorization to grant Wilkett's illogical request for a roundabout, partial adjustment for the unusual delay in compensating him for his attorneys' earlier services, we cannot award him compensation for the "special factor" of protracted delay except to the extent that we permit recovery of hourly rates of $85 billed in 1982–83.

### 4. Allegations of Excessive Fees

The Government contends that several of the amounts claimed by Wilkett are excessive, and thus not permitted under the statutory allowance of "reasonable" attorney fees "based upon prevailing market rates for the kind and quality of the services furnished." 28 U.S.C. § 2412(d)(2)(A).

#### (a) The $75 Per Hour Rate for a First–Year Associate in 1983

■ The Government asserts that an hourly rate of $75 for work performed by a new associate in 1982–83 is unduly high. After reviewing the affidavits submitted by Wilkett's attorneys and evidence of local billing rates submitted in connection with the fee claim in *Laffey v. Northwest Airlines*, 572 F.Supp. 354 (D.D.C.1983), which Wilkett has also supplied, we conclude that the $75 per hour rate charged by one of Wilkett's attorneys in 1982–83 is not unreasonable.

#### (b) Thirteen Hours Spent Researching Scope of Review

■ The Government charges that thirteen hours was an excessive amount of time for an experienced attorney to spend researching the scope of review of ICC licensing decisions, and that Wilkett should not be permitted to recover the entire amount his attorneys billed for this service. We reject the Government's contention. The portion of the fee request to which the Government points covers not only research concerning the scope of review, but also client conferences, the preparation of a timetable, and the drafting and filing of the Petition for Review. Moreover, only one-half hour was billed by a senior attorney. The bulk of the time—12.6 hours—was billed at a lower rate by a law clerk. We therefore grant Wilkett full recovery of the cost of this work.

#### (c) Total Hours Billed for Merits Brief

■ Wilkett requests $16,599 for 146.9 lawyer hours and 143.1 law clerk hours spent preparing the merits brief in this case. The Government argues that this bill is inflated, because the issues in the case were simple, the administrative record short, and the arguments before this court almost identical to those made before the ICC. Wilkett's attorneys, however, have prepared a detailed itemization of their work on the brief. Because we have no reason to question their probity, and because the number of hours billed does not strike us as unreasonable, we decline the Government's invitation to allow only partial recovery.

---

**7.** Wilkett has not requested an increase in the amounts his attorneys actually billed for work performed at that time, but merely an increase in the $75 per hour cap to allow him to recover the full hourly fees one of his attorneys charged.

#### (d) *The $1,950 Unopposed Motion to Expedite*

The Government notes that Wilkett's attorneys billed $1,950 for 24.8 hours spent in connection with Wilkett's unopposed motion to expedite his appeal. The Government considers this amount excessive, particularly in view of the fact that the short memorandum in support of the motion cited no cases. Wilkett's attorneys replied that because Wilkett Trucking's business was deteriorating, expedited consideration was important. They therefore thought it essential to prepare the motion carefully, even though it was unopposed. The absence of citations, they say, stems from the simple fact that their research failed to uncover authority on point.

In light of Wilkett's explanation and documentation in support of this work, we have no reason to question the hours submitted. The hours would seem unduly high only if counsel had prepared the motion with no effort at legal research. The fact that their legal research bore no fruit is no reason to deny them fees for the time spent on this work. Furthermore, counsel correctly recognized that there was no guarantee that their motion would be granted merely because it was unopposed. Therefore, it made good sense for them to research the issue.

#### (e) *72.9 Hours Spent Preparing for and Participating in Oral Argument*

Wilkett asks for $5,941.50 for 72.9 hours billed by his attorneys for their preparation for oral argument and participation therein. The Government decries this claim as unreasonable. It notes that each side was allotted only fifteen minutes for oral argument, and that the attorney who argued the case billed 51.4 hours, even though he had written the brief the previous year and had spent almost 65 hours drafting the reply brief two months prior to oral argument.

We agree with the Government that this bill is plainly excessive. Although seventy hours' preparation might be justified in a complex case, particularly when the lawyer arguing the case on appeal has not done considerable work on it in its earlier stages, this case did not warrant so great an expenditure of time. The issues it presented were not especially complicated and Wilkett's lead attorney had directed the litigation from start to finish. The normal amount of time for average cases was allotted for oral argument. We therefore grant an award of $2,970.75, which represents half the amount Wilkett requested.

#### (f) *The $14,418 Reply Memorandum Supporting Wilkett's Fee Application*

Wilkett requests $14,418 in fees incurred in preparing the reply memorandum in support of his fee application. When Wilkett made this request initially, the Government suggested that the amount claimed was unduly high, given that the arguments largely tracked those presented in the memorandum accompanying his fee application. The Government acknowledged, however, that its allegation was necessarily speculative, since Wilkett had failed to itemize the work performed by his attorneys in connection with the reply memorandum.

On February 5, 1988, we directed Wilkett to provide an itemized bill for this work. Wilkett has done so, and his request seems to us adequately documented and not patently unreasonable. We therefore grant this request in full.

### III. CONCLUSION

For the foregoing reasons, we accede to Wilkett's fee request with the following modifications. First, the $40,125 requested for work done on the merits phase of the litigation is reduced by $2,970.75, because the amount of time claimed in preparation for oral argument is unreasonably high. Second, the amounts claimed in fees associated with Wilkett's 1987 Supplemental Memorandum must be lowered, in accordance with the $95.83 per hour cap on attorney fees, from $10,125 to $8,580.54.

Accordingly, we award Wilkett $67,046.20 in attorney fees and other expenses, calculated as follows:

| | |
|---|---|
| Wilkett's Request | $71,561.41 |
| MINUS: | |
| Excess Oral Argument | 2,970.75 |
| Excess 1987 Memorandum | 1,544.46 |
| TOTAL | $67,046.20 |

*So Ordered.*