## DISTRICT NO. 1, PACIFIC COAST DISTRICT, MARINE ENGINEERS' BENEFICIAL ASSOCIATION, Petitioner,

v.

## MARITIME ADMINISTRATION, et al., Respondents.

BLNG, Inc., et al., Intervenors

No. 99–1517.

United States Court of Appeals, District of Columbia Circuit.

Argued May 17, 2000.

Decided June 16, 2000.

Thomas L. Mills argued the cause for petitioner. With him on the briefs were Constantine G. Papavizas, William A. Anderson, II and W. Patrick Morris.

Bruce G. Forrest, Attorney, U.S. Department of Justice, argued the cause for respondent. With him on the brief were David W. Ogden, Acting Assistant Attorney General, Douglas N. Letter and Robert S. Greenspan, Attorneys, John Patrick Wiese and John G. Salisbury, Attorneys, U.S. Department of Transportation. Edward Himmelfarb, Attorney, U.S. Department of Justice, entered an appearance.

Michael Joseph argued the cause for intervenor. With him on the brief were E. Alex Blanton and Joseph O. Click.

Before: GINSBURG, SENTELLE and GARLAND, Circuit Judges.

Opinion for the court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

Pursuant to § 9 of the Shipping Act, 1916, the Maritime Administration (Mar-Ad) conditionally granted applications to transfer the registry of eight vessels from the United States to the Republic of the Marshall Islands. District No. 1, Pacific Coast District, Marine Engineers' Beneficial Association, the collective bargaining representative for the licensed officers on the vessels, along with certain of its members (hereinafter collectively, the Union), petitioned for review. The Union claims that: (1) the MarAd's decision was arbitrary and capricious; (2) the MarAd accepted and relied upon *ex parte* communications in violation of both the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*, and the Fifth Amendment to the Constitution of the United States; and (3) § 9 of the Shipping Act is an unconstitutional delegation of legislative authority. Because we lack jurisdiction over the claims based upon the APA, we dismiss the petition in part. In all other respects we deny the petition: MEBA did not properly raise its Fifth Amendment argument and § 9 of the Shipping Act is not an unconstitutional delegation of authority.

## I. Background

Section 9 of the Shipping Act prohibits the owner of a vessel from transferring its registry out of the United States without the approval of the Secretary of Transportation. *See* 46 App.U.S.C.A. § 808(c)(2). The Secretary has delegated his authority under that section to the MarAd, 49 C.F.R. § 1.66(a), which has in turn promulgated regulations implementing the approval requirement. The regulations provide in pertinent part:

(b) Vessels of 1,000 gross tons or more.

(1) Applications for approval of Transfer to foreign registry and flag ... of Documented Vessels or vessels the last documentation of which was under the laws of the United States and which are of 1,000 gross tons or more will be evaluated in light of—

(i) The type, size[,] speed, general condition, and age of the vessel;

(ii) The acceptability of the owner, proposed transferee and the country of registry ...; and

(iii) The need to retain the vessel under U.S. documentation, ownership or control for purposes of national defense, maintenance of an adequate merchant marine, foreign policy considerations or the national interest.

46 C.F.R. § 221.15(b).

BLNG applied to the MarAd for permission to transfer the registry of eight vessels from the United States to the Republic of the Marshall Islands. Although not required by statute or regulation to do so, the MarAd published in the Federal Register notice of the applications and a call for comments thereon. After the announced period for the submission of comments had ended, however, the MarAd accepted additional comments from, among others, BLNG and its attorneys.

In its decision the MarAd canvassed the arguments put forth in the comments and determined that the following regulatory criteria were relevant to its decision: (1) the general condition of the vessels; (2) the acceptability of the Republic of the Marshall Islands; (3) national defense; (4) the maintenance of an "adequate merchant marine"; (5) "foreign policy considerations"; and (6) other aspects of the "national interest."

The MarAd applied these criteria as follows: (1) The vessels, which are used to ship liquified natural gas, are in good working condition. (2) The agency has previously found the Republic of the Marshall Islands to be an acceptable transferee. (3) The Department of Defense, upon the MarAd's inquiry, determined that the vessels are not necessary for national defense; in any event, the transfer was conditioned so that the vessels could be returned to the United States if needed in an emergency. (4) Maintenance of an adequate merchant marine does not require

retaining the vessels. The Department of Energy confirmed there are no current projects planned that would require the vessels and, although some jobs might be lost to United States seamen because of the transfer, BLNG has agreed for at least five years to maintain crews composed significantly of United States seamen on six of the eight vessels. (5) The Department of State informed the MarAd that no foreign policy consideration required retaining the vessels in United States registry. (6) The national interest did not otherwise require retaining the vessels, primarily because the Republic of the Marshall Islands adequately regulates safety aboard vessels and the crew will continue to be composed mainly of United States seamen.

## II. Analysis

As indicated above, the Union raises three objections to the MarAd's order: (1) It is arbitrary and capricious and therefore invalid under the APA; (2) the MarAd's acceptance of and reliance upon *ex parte* comments violated both the APA and the Fifth Amendment; and (3) § 9 is an unconstitutional delegation of lawmaking authority. Before reaching the merits of those arguments, we address whether the Union has standing to raise them.

BLNG contends that the Union lacks standing under Article III of the Constitution because it has demonstrated neither a legally significant injury nor that the MarAd's order is the cause of any injury the Union may have suffered. BLNG also maintains that the Union lacks prudential standing to sue under § 9 of the Shipping Act because the interests the Union is seeking to protect are not "arguably within the zone of interests to be protected or regulated by" § 9. *Reytblatt v. U.S. NRC*, 105 F.3d 715, 721 (D.C.Cir.1997).

BLNG does not dispute that, as a result of the MarAd's order, some of the Union's members among the crews will lose their jobs and the Union will be displaced as the exclusive bargaining representative. That is surely enough to give the Union stand-

ing for the purposes of Article III. In addition, the Union's claimed interest in "maintaining and promoting jobs in the U.S. merchant marine to service this nation's economic and national defense needs" is arguably within the zone of interests protected by § 9. The preamble to the Shipping Act states as its purposes in creating the MarAd's predecessor "encouraging, developing, and creating a naval auxiliary and naval reserve and a merchant marine," 39 Stat. 728 (1916), and the MarAd reasonably concluded in its order that a meaningful merchant marine is one with "a trained and efficient citizen personnel." *See also Meacham Corp. v. United States,* 207 F.2d 535, 542–43 (4th Cir.1953) (tracing legislative history of and amendments to Shipping Act). Indeed, the MarAd's organic statute provides that "the United States shall have a merchant marine ... operated under the United States flag by citizens of the United States insofar as may be practicable." 46 U.S.C.App. § 1101. We therefore conclude that the Union clearly has demonstrated both the injury in fact and the causation necessary to give it constitutional standing and that its interests are arguably within the zone of interests protected by § 9.

## A. Claims based upon the APA

The Union first contends that MarAd's order is invalid under the APA because it is arbitrary and capricious. *See* 5 U.S.C. § 706(2)(A). The MarAd responds that decisions regarding transfers of registry are "committed to agency discretion by law," 5 U.S.C. § 701(a)(2), and therefore outside the range of judicial review authorized in the APA. If the MarAd is correct, then this court lacks jurisdiction over the Union's claims based upon the APA. *See, e.g., ICC v. Brotherhood of Locomotive Engineers,* 482 U.S. 270, 282, 287, 107 S.Ct. 2360, 96 L.Ed.2d 222 (1987).

The MarAd concedes that its regulations provide specific criteria to govern its decisions regarding transfers of registry, but contends that, as in *National Federation of Federal Employees v. United States,* 905 F.2d 400 (D.C.Cir.1990) (*NFFE*), the subject matter of the agency's decision does not admit of judicially manageable standards. We agree. In *NFFE,* we were asked to review an APA challenge to the closure of certain military bases. The Secretary of Defense had created a Commission on Base Realignment and Closure and directed it to "identify which bases should be closed or realigned." *Id.* at 402. The Secretary listed nine criteria upon the basis of which the Commission was to make its recommendations, *see id.,* but the Commission itself decided that, of the nine, the "military value of a base should be the preeminent factor." *Id.* at 405–06. After the Commission had submitted its recommendations to the Secretary, the Congress passed the Base Closure Act directing the Secretary to implement them. *See id.* at 403.

The court held that the Secretary's decisions regarding base closures and realignments were "committed to agency discretion by law" and hence not subject to review under the APA. *See id.* at 405. Although the Base Closure Act incorporated the nine specific criteria that had informed the Secretary's closure and realignment decisions, the court held that his decisions were not reviewable because the "subject matter of those criteria is not 'judicially manageable.'" *Id.* at 405; *see Heckler v. Chaney,* 470 U.S. 821, 830, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985). Review of the Secretary's decisions would require "second guessing the Secretary's assessment of the nation's military force structure and the military value of the bases within that structure," and courts are "ill-equipped to conduct reviews of the nation's military policy." *Id.* at 405–06.

Even a cursory examination of the order under review in this case reveals that the primary factors driving the MarAd's decision are national defense, the adequacy of the merchant marine, foreign policy, and the national interest. Indeed, the MarAd specifically consulted the Departments of

State, Defense, and Energy to aid in its decision, and the overwhelming majority of the analysis in the agency's decision relates to these factors. Were we to decide whether the MarAd's order is reasonable, we would necessarily be "second guessing" not only the Executive's determinations regarding the military value of the eight vessels but also its judgments on questions of foreign policy and national interest. These are not subjects fit for judicial involvement. *See, e.g., People's Mojahedin Org. v. Dep't of State,* 182 F.3d 17, 23 (D.C.Cir.1999).

The Union attempts to distinguish *NFFE* on the ground that the concededly "preeminent factor" in the decision under review in that case was the military value of the bases, whereas in this case consideration of the national defense was "but one factor [the MarAd] was required to consider per its own regulations." As we have noted, however, considerations of national security, foreign policy, and national interest were clearly at the center of the MarAd's decision; the Union does not even suggest that the other criteria listed in the regulations were given similar weight in this case.

■ The Union also argues that the MarAd's decision must be subject to review for conformity with the APA because the Hobbs Act specifically provides that the courts of appeal have:

> jurisdiction ... to determine the validity of—
>
> (3) all rules, regulations, or final orders of—
>
> (A) the Secretary of Transportation issued pursuant to section 2, 9, 37, or 41 of the Shipping Act, 1916 ...

28 U.S.C. § 2342(3)(A). That the courts have statutory jurisdiction over an act of the Executive in some contexts does not automatically imply, however, that the courts always have jurisdiction to review that act for conformity with the APA. In *ICC v. Brotherhood of Locomotive Engineers,* the Supreme Court held, despite the grant of jurisdiction in the Hobbs Act over "final orders" issued by the ICC, that the agency's order denying reconsideration of a prior order was not subject to review under the APA because the latter decision was "committed to agency discretion by law." *See* 482 U.S. at 282, 107 S.Ct. 2360. Having held that the MarAd's decision is likewise committed to agency discretion by law, it follows that the grant of jurisdiction in the Hobbs Act to review final orders issued under § 9 is similarly qualified.

In sum, the MarAd's decision regarding the transfer of registry in this case is committed to its discretion by law. We therefore lack jurisdiction over the Union's claims based upon the APA. *See Locomotive Engineers,* 482 U.S. at 282, 287, 107 S.Ct. 2360. We also note, but we do not decide, that in a case where considerations of national defense, foreign policy, and the national interest do not play a significant role, if such there be, we may well have jurisdiction to review the MarAd's decision regarding a transfer of registry.

**B.   *Ex Parte* Communications**

■ The Union next contends that the MarAd's acceptance of and reliance upon *ex parte* communications denied it "fundamental fairness" in violation of both the APA and the Fifth Amendment. To the extent the Union's procedural complaint rests upon the APA, again, we lack jurisdiction to review it.

■ Although the APA prohibits *ex parte* contacts in an adjudication or rulemaking "required by statute to be made on the record after opportunity for an agency hearing," 5 U.S.C. § 553(c), *see* 5 U.S.C. §§ 554(a), 557(d), there is no such requirement applicable to the MarAd's review of an application under § 9. In the absence of such a statutory command, of course, "[a]gencies are free to grant additional procedural rights in the exercise of their discretion, but reviewing courts are generally not free to impose them if the agencies have not chosen to grant them." *Vermont Yankee Nuclear Power Corp. v. NRDC,*

435 U.S. 519, 524, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978). Here the agency has not granted anyone the right to be free of *ex parte* communications. In the absence of any statutory or selfimposed limitation, we have no jurisdiction to review under the APA an agency's procedural decision regarding how best to make a substantive decision committed by law to the agency's discretion.

The Union attempts to circumvent this analysis by arguing that once the MarAd requested comments from interested parties, it relinquished its discretion to "accept and rely upon *ex parte* communications without giving the public an opportunity to respond to them." The authorities the Union cites as support for that claim, however, do not stand for that broad proposition. In each case either the governing statute or a regulation or both required the agency to afford interested parties an opportunity to submit comments. *See Independent U.S. Tanker Owners Comm. v. Lewis,* 690 F.2d 908, 923 (D.C.Cir.1982) (regulation requiring "opportunity for comment by interested parties"); *United States Lines, Inc. v. FMC,* 584 F.2d 519, 539 (D.C.Cir.1978) ("Under the Shipping Act notice and a hearing are required prior to Commission approval of any agreement subject to Section 15"); *National Wildlife Fed'n v. Marsh,* 568 F.Supp. 985, 992–93 (D.D.C.1983) (statute requiring "notice and opportunity for public hearings" and regulation requiring opportunity for "meaningful comments"). As we have already noted, no statute or regulation requires the MarAd to afford interested parties the opportunity to submit comments on an application for a transfer of registry under § 9 and, in the absence of such a requirement, whether the MarAd permits comments and how it deals with those comments are procedural decisions that, like the underlying substantive decision, are matters within the agency's discretion. *See Vermont Yankee,* 435 U.S. at 524, 98 S.Ct. 1197.

To the extent the Union's objection to *ex parte* communications rests upon the Fifth Amendment, its argument is not properly before the court. In its opening brief the Union conclusorily asserted that the MarAd accepted *ex parte* communications in violation of the Fifth Amendment. The other parties understandably did not dignify this naked assertion with a response; nor shall we. *See Carducci v. Regan,* 714 F.2d 171, 177 (D.C.Cir.1983) ("We ... decline to entertain appellant's asserted but unanalyzed constitutional claim"); *see also United States v. Watson,* 171 F.3d 695, 699 n. 2 (D.C.Cir.1999) (same). Even if the Union had developed the argument in its reply brief beyond the vanishingly terse afterthought it did present, out of fairness to the parties we still would not review the Union's argument. *Cf. Sitka Sound Seafoods, Inc. v. NLRB,* 206 F.3d 1175, 1181 (D.C.Cir.2000) ("In order to prevent this sort of sandbagging of appellees and respondents, we have generally held that issues not raised until the reply brief are waived").

C. Delegation of Legislative Authority

The Union's final contention is that § 9 of the Shipping Act is an unconstitutional delegation of legislative authority to the Executive. Relying primarily upon our recent decision in *American Trucking Ass'ns v. EPA,* 175 F.3d 1027, *modified,* 195 F.3d 4 (1999), *cert. granted sub nom. Browner v. American Trucking Ass'ns,* —— U.S. ——, 120 S.Ct. 2003, 146 L.Ed.2d 954 (2000), *and* —— U.S. ——, 120 S.Ct. 2193, —— L.Ed.2d —— (2000), the Union argues that neither the statute nor the MarAd's regulations provide an "intelligible principle" to guide the agency's decisionmaking under § 9. For its part, the MarAd contends there is an intelligible principle but, even were there not, the constraints upon the ability of the Congress to delegate its lawmaking authority do not apply in this case. Because we agree with the latter point, we do not address the former.

In *United States v. Curtiss–Wright Corporation,* 299 U.S. 304, 57 S.Ct. 216, 81 L.Ed. 255 (1936), the Supreme Court held that the bar against excessive delegation of the Congress's lawmaking authority did not apply to a Joint Resolution authorizing the President to declare unlawful the sale of arms to certain countries if he determined such a ban would encourage peace between them. *See* 299 U.S. at 312, 57 S.Ct. 216. The Court offered two general rationales. First, it reasoned that the "investment of the federal government with the powers of external sovereignty did not depend upon the affirmative grants of the Constitution," *id.* at 318, 57 S.Ct. 216, and, in the realm of "external affairs," "the President alone has the power to speak or listen as a representative of the nation." *Id.* at 319, 57 S.Ct. 216. The Court noted especially the need for the President to have wide discretion in order to avoid embarrassing our relations with foreign nations. *See id.* at 320, 57 S.Ct. 216. Second, the Court traced the long historical practice supporting the delegation of broad discretion to the Executive in external affairs. *See id.* at 322–326, 57 S.Ct. 216. The legislation noted by the Court includes: (1) an act permitting the President to "lay the embargo upon all ships and vessels in the ports of the United States, including those of foreign nations," whenever he determined the public safety so required, *id.* at 322, 57 S.Ct. 216; (2) an act authorizing the President, "whenever an armed vessel entering the harbors or waters within the jurisdiction of the United States and required to depart therefrom should fail to do so," to "forbid ... all intercourse with such vessel ... and the officers and crew thereof" and to "prohibit all supplies and aid from being furnished them," *id.* 323–24, 57 S.Ct. 216; and (3) numerous acts permitting the President to suspend the duties laid upon foreign vessels if he determined that duties laid upon ships of the United States were removed. *See id.* at 324–25 n.2, 57 S.Ct. 216. On the basis of these two lines of reasoning, the Court held that the "uniform, long-continued and undisputed legislative practice just disclosed rests upon an admissible view of the Constitution which, even if the practice found far less support in principle then we think it does, we should not feel at liberty at this late day to disturb." *Id.* at 329, 57 S.Ct. 216.

The transfer of a vessel's registry from the United States to a foreign nation involves considerations and concerns similar to those operative in *Curtiss–Wright.* Little imagination is required to envision situations in which a request to transfer the registry of a vessel might involve delicate foreign policy and national defense concerns. Indeed, in the course of granting the application in this case, the MarAd consulted with the Departments of State, Defense, and Energy in an effort to gauge just those types of concerns. Furthermore, as the Court noted in *Curtiss–Wright,* there is a long tradition of permitting the Executive broad discretion in the area of international shipping; the Union has offered no reason to treat § 9 differently. Instead, the Union simply asserts that "[s]ection 9 does not involve delicate negotiations with other governments or any manner of interaction with other countries." In fact, however, the Union itself opposed the application below on the ground that the transfer would adversely affect the balance of trade with Japan and that the Republic of the Marshall Islands would not adequately regulate the safety of the vessels. In sum, because "the whole aim of [§ 9] is to affect a situation entirely external to the United States," it is not "open to ... challenge [as] an unlawful delegation of legislative power to the Executive." *Curtiss–Wright,* 299 U.S. at 315, 57 S.Ct. 216.

### III.   Conclusion

For the foregoing reasons, the petition for review is

*Dismissed in part and denied in part.*